## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RANDA ISKANDAR,<br>    21948 Sugarland Oaks Sq.,<br>    Sterling, VA 20164,<br><br>    **PLAINTIFF,**<br><br>v.<br><br>EMBASSY OF THE STATE OF KUWAIT,<br>    2940 Tilden St. NW,<br>    Washington, DC 20008,<br>                Serve:<br>                Ministry of Foreign Affairs,<br>                Arabian Gulf Street,<br>                Kuwait City, Kuwait,<br><br>    **DEFENDANT.** | Civil Action No.  1:14-cv-721 |

## COMPLAINT

COMES NOW Randa Iskandar ("Plaintiff"), by counsel, and brings this Complaint against the Embassy of the State of Kuwait ("Defendant") on the following grounds:

### NATURE OF ACTION

1.      This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

2.      Defendant discriminated against Plaintiff on basis of her gender by sexually harassing her and retaliated against her upon her subsequent opposition.

### JURISDICTION

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1332 because this action arises under federal law, the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states.

## VENUE

4.      Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(b) and Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because a substantial part of the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

## PARTIES

5.      Plaintiff is a female who resides in the Commonwealth of Virginia.  At all times relevant to this lawsuit, until her termination in January 2014, she was employed with Defendant at its Health Office, located at 4301 Connecticut Avenue, NW, Suite 330, Washington, DC 20008.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.      Plaintiff has exhausted her administrative remedies.  She timely filed administrative charges of gender discrimination, sexual harassment and retaliation against Defendant with the U.S. Equal Employment Opportunity Commission (EEOC), Washington Field Office, EEOC Charge No. 570-2014-00435.

7.      In February 2014, Plaintiff received notice of the EEOC's closing the file on her charge and her suit rights.

## STATEMENT OF FACTS

8.      The Health Office of Defendant acts as a health insurance provider to Kuwaiti nationals.  When Kuwaiti citizens in the United States require health care, they submit a claim to the Health Office for payment.

9.      The Health Office engages in activities similar to any other health insurance provider, which include evaluating the validity of claims for health care treatment, negotiating

and issuing payment for claims to health care providers, and reimbursing Kuwaiti citizens for out-of-pocket health care expenses.

10.     Plaintiff was employed as a claims processor at the Health Office from 2006 until her termination in January 2014.

11.     Defendant discriminated against Plaintiff on the basis of her gender by committing and condoning sexual harassment.

12.     Further, Defendant retaliated against Plaintiff for engaging in protected activity.

### Gender Discrimination and Sexual Harassment

13.     In December 2011, Dr. Abdullah Alwetaib became the new head of Plaintiff's Health Office, and he immediately began making inappropriate, uninvited sexual remarks towards her.

14.     The sexual harassment began with physically intimate touching that made Plaintiff uncomfortable, such as putting his hand on her shoulder when they talked, or holding her hand when she gave him paperwork.

15.     Plaintiff requested that Dr. Alwetaib stop touching her in these uncomfortable ways, but his inappropriate physical contact continued.

16.     In response to Plaintiff's complaints, Dr. Alwetaib stated repeatedly that he would fire Plaintiff if she mentioned his unbecoming behavior to others.

17.     Dr. Alwetaib's inappropriate touches escalated to the point where he touched Plaintiff's breast outside of a work-related meeting in October 2013.

18.     In addition to inappropriate touches, Dr. Alwetaib made graphic and inappropriately sexual remarks to Plaintiff, such as repeatedly asking her opinion on anal sex. Dr. Alwetaib called Plaintiff into his office and closed the door, then asked Plaintiff which

3

religion and sect she followed.  Dr. Alwetaib's religious inquiries alone made Plaintiff uncomfortable.  He then told a story of an acquaintance whose wife would not consent to anal sex for religious reasons, and repeatedly asked Plaintiff what her opinion on the matter was, and whether there was a religious rule that the acquaintance could cite to his wife to persuade her to engage in anal intercourse.

19.     Dr. Alwetaib's inappropriate remarks continued even after Plaintiff expressed that she was not comfortable with those conversations.

20.     In November 2013, Plaintiff complained about Dr. Alwetaib's actions to the Ambassador of the State of Kuwait, His Excellency Salem Abdulla Al-Jaber Al-Sabah.  The Ambassador took no action, and Dr. Alwetaib's actions continued unabated.

21.     In December 2013, a committee from the State of Kuwait was visiting the Health Office to investigate complaints from other employees regarding leadership and organizational incompetence.

22.     Shortly after Dr. Alwetaib met with the committee, he gave Plaintiff an angry glare and threatened her, stating that he would fire her if she complained to the committee about his prior inappropriate touching and graphic conversations.

23.     In spite of Dr. Alwetaib's threats, Plaintiff placed a complaint about his behavior to the committee.

### Retaliation

24.     After Plaintiff complained to her female supervisor, the Ambassador, and the visiting committee about Dr. Alwetaib's inappropriate behavior, Dr. Alwetaib subjected Plaintiff to retaliatory treatment that was public and witnessed by others.

25.     For example, Dr. Alwetaib denied Plaintiff's requests for personal leave without reason, even though Plaintiff had vacation days available to her and had arranged for her work duties to be accomplished by a co-worker in her absence.

26.     When Plaintiff's uncle died, Dr. Alwetaib denied Plaintiff's request for bereavement leave, in violation of the Embassy's policies.

27.     When Plaintiff missed work for a doctor's appointment in December 2013, Dr. Alwetaib required a note from her doctor that contained a diagnosis, in violation of Plaintiff's privacy rights under the Health Insurance Portability and Accountability Act.

28.     Dr. Alwetaib did not ask any other employee for a doctor's diagnosis when they took sick leave.

29.     Dr. Alwetaib also made it very difficult for Plaintiff to do her work. For example, on January 9, 2014, he restricted her access to necessary accounting software, and then prevented the IT department from fixing the problem.

30.     In contrast to his treatment of Plaintiff, Dr. Alwetaib showed preferential treatment to another female employee who had responded positively to his attention. Dr. Alwetaib gave this other employee raises with minimal justification and when others did not receive raises for the same actions, routinely approved her requests for overtime when he denied others' requests, and approved her requests for leave when he denied others' requests.

31.     Dr. Alwetaib's retaliation culminated in his termination of Plaintiff's employment on January 16, 2014, without cause or justification.

32.     Plaintiff's employment contract specifies that, upon the conclusion of her employment with the Health Office, she will be paid severance based on the number of years she was employed by the Health Office.

33.     The contract states that Plaintiff will receive a one-time payment that is equal to half of her monthly salary for each year she worked, up to five years, and then her full monthly salary for each year she worked after five years.

34.     Plaintiff's monthly salary when she was terminated was approximately $5,200.00, and she worked for the Health Office for eight years.  Therefore, she is owed a sum equal to $2,600.00 times five, plus $5,200.00 times three.

35.     Plaintiff has not received the severance specified in her employment contract.

### CLAIMS FOR RELIEF

#### Count I
*Gender Discrimination and Sexual Harassment*
*in Violation of Title VII of the Civil Rights Act of 1964,*
*42 U.S.C. § 2000e-2(a)*

36.     Plaintiff realleges the preceding paragraphs as though fully set forth herein.

37.     Defendant discriminated against Plaintiff because of her gender intentionally, willfully or with reckless indifference to her federally protected rights.

38.     Defendant's conduct violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), which makes it unlawful to discriminate against employees on the basis of gender.

39.     Defendants discriminated against Plaintiff in violation of Title VII when its employee, Dr. Alwetaib, sexually harassed her and when Defendant failed to provide Plaintiff any remedies upon knowledge of Dr. Alwetaib's discriminatory behavior.

40.     As a result of Defendant's discriminatory actions, Plaintiff has suffered lost compensation, diminished earning capacity, humiliation, mental anguish, and emotional distress.

41.     For the damages arising from her suffering, Plaintiff requests relief in the Prayer

for Relief below.

## Count II
*Retaliation in Violation of Title VII of the Civil Rights Act of 1964,*
*42 U.S.C. 2000e-3(a)*

42.     Plaintiff realleges the preceding paragraphs as though fully set forth herein.

43.     Defendant's conduct violated Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e-3(a), which makes it unlawful to discriminate or take adverse actions against

employees who oppose any practice that is unlawful under Title VII.

44.     Defendants retaliated against Plaintiff in violation of Title VII when they

reprised her for opposing gender discrimination and sexual harassment at the Health Office by

creating a hostile work environment, subjecting her to negative treatment that was different

from other employees, preventing her from accomplishing her work duties, and terminating her

for reporting unlawful gender discrimination, sexual harassment and retaliation by Dr.

Alwetaib.

45.     As a result of Defendant's discriminatory actions, Plaintiff has suffered lost

compensation, diminished earning capacity, humiliation, mental anguish and emotional distress.

46.     For the damages arising from her suffering, Plaintiff requests relief in the Prayer

for Relief below.

## Count III
*Breach of Contract*

47.     Plaintiff realleges the preceding paragraphs as though fully set forth herein.

48.     In exchange for Plaintiff's continued employment, Defendant agreed to pay to

Plaintiff a lump sum when she left Defendant's employment.

49.     That lump sum is to be based on the length of Plaintiff's employment and her salary when she left the Health Office.

50.     Plaintiff has not received her lump-sum severance pay.

### Prayer for Relief

WHEREFORE, Plaintiff requests that this Court award Plaintiff:

a.      Nine Hundred Thousand Dollars ($900,000.00) in compensatory damages for Defendant's unlawful employment practices against her, including but not limited compensation for emotional distress, back and front pay, benefits, severance pay, and all other emoluments of her position;

b.      Punitive damages;

c.      Attorneys' fees and costs of this action, including pre- and post- judgment interest at the legal rate on damages as appropriate; and

d.      Any further relief that this Court deems just and proper.

### JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Dated:  April 24, 2014

Respectfully submitted,
RANDA ISKANDAR
By counsel

FIRSTPOINT LAW GROUP, P.C.

Meredith Ralls, DC Bar No. 1010407
10615 Judicial Drive
Suite 101
Fairfax, Virginia 22030
Phone: (703) 385-6868
Fax:    (703) 385-7009
mralls@firstpointlaw.com
*Counsel for Plaintiff*